**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| VIRSEC SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>CROWDSTRIKE, INC. and<br>CROWDSTRIKE HOLDINGS, INC.,<br><br>Defendants. | **Civil Action No. 1:26-cv-03053**<br><br><br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

1. Plaintiff Virsec Systems, Inc. ("Virsec" or "Plaintiff") brings this patent infringement action against Defendants CrowdStrike, Inc. and CrowdStrike Holdings, Inc. (collectively, "CrowdStrike" or "Defendants").

2. Virsec is a pioneer in cybersecurity, particularly in the field of runtime application and workload protection. Its principal inventor, Satya Gupta, founded the company in June 2005 after realizing that established companies were approaching cybersecurity the wrong way. Mr. Gupta recognized that the industry needed new technology to provide real-time detection and prevention of memory corruption attacks that are used to compromise application workloads. Virsec's technology, which is now protected by over fifty United States patents, proved to be a major breakthrough and an essential tool in thwarting a new generation of cyber-security attacks via real-time detection and prevention.

3. For example, Virsec's TrustGuardian™ product, depicted below, provides persistent runtime protection to identify and prevent attacks.




4. Unlike conventional security tools that rely on signatures, heuristics, or behavioral analysis to detect threats after they have begun to execute, Virsec's patented innovations and products, such as TrustGuardian™, operate at the runtime level to map and enforce the expected execution behavior of protected software, automatically identifying and blocking unauthorized deviations as they occur and before any damage can be done.

5. Virsec's technology has been deployed to protect mission-critical infrastructure across both commercial and government environments, and the company has received significant investment and industry recognition for its contributions to advancing the state of the art in application-aware, runtime security. For example, in 2026, Virsec won the Best in SaaS Award for AI-Powered Application Security. The Asserted Patents, defined below, are directed at key aspects of Virsec's innovations.

6. CrowdStrike sells endpoint security software and services under the Falcon brand. The core of the Falcon platform is the Falcon sensor, software that runs on computers protected by CrowdStrike to monitor running applications and to detect and block attacks. CrowdStrike reports the resulting detections to users through its cloud-based Falcon console.

7. CrowdStrike promotes the Falcon platform as detecting the memory-corruption exploits that the Asserted Patents address. For example, in December 2021 CrowdStrike announced a Falcon sensor feature it calls "Hardware Enhanced Exploit Detection," which CrowdStrike describes as detecting return-oriented programming and other code-reuse exploits on Windows computers.[1] According to CrowdStrike, the Falcon sensor does so in part by maintaining a "shadow stack" that records the addresses of call instructions and then checks whether the targets of return instructions match them, recording any mismatches. On information and belief, CrowdStrike intercepting functions at their entry points to prevent the execution of potentially malicious code.

8. CrowdStrike's Falcon platform also includes configurable "exploit mitigation" protections, which CrowdStrike instructs its customers to enable through Falcon prevention policies.

9. Virsec brings this lawsuit to address CrowdStrike's infringement of the Asserted Patents.

## NATURE OF THE ACTION

10. This is a civil action for infringement of United States Patent Nos. 8,966,312 (the "'312 patent") and 11,599,634 (the "'634 patent") (collectively, the "Asserted Patents") under the patent laws of the United States, 35 U.S.C. § 1 et seq.

---

[1] https://www.crowdstrike.com/en-us/blog/introducing-falcon-hardware-enhanced-exploit-detection/ (Ex. 3)

## THE PARTIES

11. Virsec is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 325 S. 1st Street, Suite 120, San Jose, CA 95113.

12. Defendant CrowdStrike, Inc. is a Delaware corporation and a wholly owned subsidiary of Defendant CrowdStrike Holdings, Inc., with offices at 206 E. 9th Street, Suite 1400, Austin, Texas 78701. On information and belief, CrowdStrike, Inc. maintains multiple offices in Texas, including at 206 E. 9th Street, Suite 1400, Austin, Texas 78701. CrowdStrike, Inc. has been registered to do business in the State of Texas since August 8, 2018, including, on information and belief, for the purpose of selling cloud-delivered cybersecurity solutions to customers in Texas.

1. CrowdStrike Holdings, Inc. is a Delaware corporation with offices at 206 E. 9th Street, Suite 1400, Austin, Texas 78701. CrowdStrike Holdings, Inc. is the parent of, and directly and wholly owns, CrowdStrike, Inc. On information and belief, CrowdStrike Holdings Inc. controls or otherwise directs and authorizes the activities of CrowdStrike, Inc.

2. CrowdStrike may be served with process via its registered agent: Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over these claims under 28 U.S.C. §§ 1331 and 1338(a) and the patent laws of the United States, 35 U.S.C. § 1 et seq.

4. The Court has personal jurisdiction because CrowdStrike maintains its principal executive offices in this District, regularly conducts business in this District, and has committed acts of patent infringement in this District and the State of Texas. CrowdStrike has also established

minimum contacts with this State such that the exercise of jurisdiction over CrowdStrike would not offend traditional notions of fair play and substantial justice.

5. Additionally, or alternatively, the Court has personal jurisdiction over CrowdStrike because CrowdStrike has substantial, continuous, and systematic contacts with this State and the Western District of Texas such that the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. For example, CrowdStrike has committed and continues to commit acts of infringement in this District. CrowdStrike has made, used (including to protect its own computers and networks), sold, offered for sale, imported into, developed, and tested infringing products in this District. Further, CrowdStrike has induced others to use infringing products by acts carried out by CrowdStrike's employees in this District, and end-users have used infringing products in this District. As such, jurisdiction is consistent with the principles of due process and the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code §§ 17.041, et seq.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b) because CrowdStrike has regular and established physical places of business in this District and has committed acts of patent infringement in this District. For example, CrowdStrike maintains its principal executive offices in this District at 206 E. 9th Street, Suite 1400, Austin, Texas 78701. On information and belief, CrowdStrike employees at its facilities use the Accused Products for their everyday work as well as for developing and testing the Accused Products.

7. On information and belief, CrowdStrike has numerous employees in this District—including in engineering, sales, marketing, and finance positions—who have relevant information, including information concerning the Accused Products, how those products operate, and how

CrowdStrike communicates with current and prospective customers regarding the Accused Products. In particular, on information and belief, engineers responsible for designing, developing, maintaining, and/or updating the Accused Products, and employees knowledgeable about the marketing and sales of the Accused Products, are located in Austin, Texas.

8. On information and belief, CrowdStrike Holdings, Inc. directs, controls, and profits from CrowdStrike, Inc.'s infringing activities in this District. CrowdStrike has also, directly and through its network of channel partners, including local IT service providers, purposefully and voluntarily placed the Accused Products into the stream of commerce in this District.

## THE ASSERTED PATENTS

9. The '312 and '634 patents, entitled "System and Methods for Run Time Detection and Correction of Memory Corruption," stem from a common provisional patent application (No. 60/771,734) filed on February 9, 2006 and a non-provisional patent application (No. 11/673,541) filed on February 9, 2007. The '312 and '634 patents issued on February 24, 2015 and March 7, 2023, respectively. Copies of the '312 and '634 patents are attached to this Complaint as Exhibits 1-2.

10. At the time of the invention, and to this day, computing devices run multiple software applications concurrently, each assigned its own virtual memory. Multi-tasking, though essential for allowing end-users to use their computers productively, amplifies security concerns. Specifically, hackers can "corrupt" memory during execution—for example through buffer overflow, format-string, or heap-metadata attacks, or hijacking of pointers that control execution flow—causing the application to execute unintended, attacker-controlled instructions. The specification states that memory-corruption exploits accounted for more than half of the security vulnerabilities known at the time.

11. At the time, there were several countermeasures to these security vulnerabilities, but none were satisfactory. These included:

- Reactive, signature-based detection, as used in anti-virus software, depended on already knowing what a piece of malware looks like or how it behaves, and thus could not reliably catch novel ("zero-day") exploits.
- Vendor patching involved the software vendor identifying security vulnerabilities and quickly pushing out patches to its user base. Unfortunately, this leaves a window of vulnerability between disclosure of a flaw and deployment of a fix, during which enterprise users either remain exposed or must take mission-critical systems offline to patch.
- Hardware-level memory-error correction schemes (e.g., Error Correction Code-based recovery of physically failed memory) are designed to recover from physical/hardware memory failures, but cannot address memory corruption caused by malicious software manipulation at the application layer.

12. As a solution, the specification describes storing, ahead of run-time, information about the application's expected structure (e.g., stack sub-frames, addresses that legitimate calls/returns/jumps should target, address-table contents, heap metadata) and, in some embodiments, a backup/"shadow" copy of protected memory structures.

13. At run-time, the invention dynamically checks a defined set of "invariants" tied to specific attack vectors by comparing the current state of memory/registers against the previously captured or expected state. This system declares an application layer memory corruption when a checked invariant fails to match the expected/backup state, and may then report the event and notify a user, administrator, or recovery module.

14. Because detection is based on structural invariants (e.g., “does this return address match the one we saved before the call?”) rather than on recognizing a specific virus’s signature or behavior, the specification represents that the approach advantageously catches zero-day attacks, works with binary executables without requiring recompilation or on-disk modification, and is lightweight so as to run continuously in production.

15. The written description of the ’312 and ’634 patents, therefore, describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

16. As an example, claim 1 of the ’312 patent recites:

> 1. A method comprising:
>
> detecting an application layer memory corruption of at least one portion of a control section of original memory by malicious code during run-time, where the application layer memory corruption affects execution flow of an application when otherwise left uncorrected, wherein detecting includes performing at least two different invariant checks at run-time, each invariant check including (a) capturing a state of one or more registers and at least one portion of a data segment of the control section prior to execution of a function call, (b) checking the state after the execution of the function call against the captured state and (c) declaring application layer memory corruption if the checked state and the captured state do not match; and
>
> reporting the application layer memory corruption to a user.

17. Claim 1 of the ’634 patent recites:

> 1. A method comprising:
>
> detecting an application layer memory corruption of a return address control section of a stack, wherein detecting includes:

> (a) intercepting a first instruction, of a set of instructions to be executed, in response to calling a function, the intercepting of the first instruction includes capturing a shadow copy of a calling address of the called function and executing the intercepted first instruction, the intercepting of the first instruction being performed by a first interrupt instruction that is stored in a list in memory as mapping to the first instruction, wherein (i) the list in the memory mapping the first interrupt instruction to the first instruction causes the first interrupt instruction to be instrumented to temporarily replace the first instruction and (ii) the list in the memory indicates a type of the first instruction, where the indicated type of the first instruction in the list causes the capturing;
>
> (b) intercepting a second instruction, of the set of instructions to be executed, in response to reaching a return of the called function, the intercepting of the second instruction includes checking a current return address of the called function against the shadow copy of the calling address, the intercepting of the second instruction being performed by a second interrupt instruction that is stored in the list in the memory as mapping to the second instruction, wherein (i) the list in the memory mapping the second interrupt instruction to the second instruction causes the second interrupt instruction to be instrumented to replace the second instruction and (ii) the list in the memory indicates a type of the second instruction, where the indicated type of the second instruction in the list causes the checking; and
>
> (c) declaring the application layer memory corruption based on the checked current return address and the shadow copy of the calling address not matching; and
>
> reporting the application layer memory corruption to a user.

18. The asserted claims of the ’312 and ’634 patents are valid, enforceable, and currently in full force and effect. Virsec holds all rights, title, and interest in the ’312 and ’634 patents with full rights to enforce the same including pursuing recovery of royalties for past and future damages for infringement.

## CLAIMS FOR PATENT INFRINGEMENT

19. CrowdStrike designs, makes, uses, offers for sale, sells, and imports the CrowdStrike Falcon platform, including: the Falcon sensor for operating systems, such as Windows, Linux, and MacOS, including its Hardware Enhanced Exploit Detection and exploit mitigation features; Falcon Prevent; Falcon Insight XDR; the Falcon Complete managed detection and response service; and other Falcon modules, subscriptions, and services that include or use those features, including as offered in CrowdStrike's Falcon Go, Falcon Pro, and Falcon Enterprise bundles (collectively, the "Accused Products").

20. The allegations provided below are exemplary and without prejudice to Virsec's infringement contentions with respect to the Accused Products. In providing these allegations, Virsec does not convey or imply any particular claim constructions or the precise scope of the claims. Virsec's claim construction contentions regarding the meaning and scope of the claim terms will be provided under the Court's scheduling order and local rules.

21. As detailed below, each element of at least one claim of the Asserted Patents is literally present in the Accused Products. To the extent that any element is not literally present or practiced, each such element is present or practiced under the doctrine of equivalents.

## COUNT I: Infringement of the '312 Patent

22. Virsec realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

23. CrowdStrike has infringed and continues to infringe at least claim 1 of the '312 patent in violation of 35 U.S.C. § 271(a) by, among other things, using the Accused Products in the United States, including in this District, without the permission, consent, authorization, or license of Virsec. For example, on information and belief, CrowdStrike uses the Falcon sensor to

protect its own computers, and CrowdStrike operates the Accused Products on behalf of its customers through its Falcon Complete managed detection and response service.

24. On information and belief, CrowdStrike also performs the claimed method in an infringing manner in the United States and in this District when developing and testing the Accused Products and corresponding systems, when its employees use the Accused Products, and/or when providing or administering services to third parties, customers, and partners using the Accused Products.

25. The Accused Products meet all limitations of at least claim 1 of the ’312 patent. Exhibit 5, incorporated herein by reference, provides an exemplary element-by-element comparison of claim 1 against certain Accused Products, which Virsec provides without the benefit of information about the Accused Products obtained through discovery.

26. Virsec contends that each element of at least claim 1 is literally present in the Accused Products. If, as a result of the Court’s constructions or other determinations, one or more claim elements are not literally present, Virsec contends that each such element is present under the doctrine of equivalents.

27. CrowdStrike, in violation of 35 U.S.C. § 271(b), has also indirectly infringed and is indirectly infringing at least claim 1 of the ’312 patent by inducing third parties, including its customers and channel partners, to use the Accused Products in the United States, and particularly in Texas. Through its sales of, and subscription agreements for, the Accused Products, CrowdStrike is doing so with knowledge of the ’312 patent at least as of the filing and service of this Complaint, knows or should know that the acts of these third parties will result in infringement of the ’312 patent, and has specific and actual intent to cause these third parties to infringe the ’312 patent. For example, CrowdStrike makes its security services available on its website, widely

advertises those services, provides applications that allow partners and users to access those services, provides instructions for installing, configuring, and maintaining the Accused Products, and provides technical support to users, including from its offices in this District.

28. CrowdStrike, in violation of 35 U.S.C. § 271(b), actively instructs, encourages, and/or aids such infringement through various acts, including instructing and/or training its customers to deploy and configure the Accused Products in a manner covered by at least claim 1 of the ’312 patent. For example, CrowdStrike instructs customers to install the Falcon sensor and to enable its exploit mitigation and other prevention features through Falcon prevention policies, and describes to customers the operation of its Hardware Enhanced Exploit Detection feature:

- https://www.crowdstrike.com/en-us/blog/introducing-falcon-hardware-enhanced-exploit-detection/ (Ex. 3); and
- https://www.crowdstrike.com/en-us/resources/videos/how-to-prevent-malware-with-crowdstrike-falcon/ (Ex. 4).

29. CrowdStrike has had knowledge of the ’312 patent, and of its infringement thereof, at least as of the filing and service of this Complaint.

30. CrowdStrike has been, and currently is, contributorily infringing the ’312 patent, in violation of 35 U.S.C. § 271(c), by selling or offering to sell, in this judicial district and throughout the United States, components that embody a material part of the inventions described in the ’312 patent, are known by CrowdStrike to be especially made or especially adapted for use in infringement of the ’312 patent, and are not staple articles of commerce or commodities suitable for substantial, non-infringing use, including at least the Falcon sensor’s Hardware Enhanced Exploit Detection and exploit mitigation components of the Accused Products. CrowdStrike’s

actions contribute to the direct infringement of the ’312 patent by others, including customers of the Accused Products, in violation of 35 U.S.C. § 271(c).

31. Virsec has suffered and continues to suffer damage as a result of CrowdStrike’s infringement of the ’312 patent.

**COUNT II: Infringement of the ’634 Patent**

32. Virsec realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

33. CrowdStrike has infringed and continues to infringe at least claim 1 of the ’634 patent in violation of 35 U.S.C. § 271(a) by, among other things, using the Accused Products in the United States, including in this District, without the permission, consent, authorization, or license of Virsec. For example, on information and belief, CrowdStrike uses the Falcon sensor to protect its own computers, and CrowdStrike operates the Accused Products on behalf of its customers through its Falcon Complete managed detection and response service.

34. On information and belief, CrowdStrike also performs the claimed method in an infringing manner in the United States and in this District when developing and testing the Accused Products and corresponding systems, when its employees use the Accused Products, and/or when providing or administering services to third parties, customers, and partners using the Accused Products.

35. The Accused Products meet all limitations of at least claim 1 of the ’634 patent. Exhibit 6, incorporated herein by reference, provides an exemplary element-by-element comparison of claim 1 against certain Accused Products, which Virsec provides without the benefit of information about the Accused Products obtained through discovery.

36. Virsec contends that each element of at least claim 1 is literally present in the Accused Products. If, as a result of the Court's constructions or other determinations, one or more claim elements are not literally present, Virsec contends that each such element is present under the doctrine of equivalents.

37. CrowdStrike, in violation of 35 U.S.C. § 271(b), has also indirectly infringed and is indirectly infringing at least claim 1 of the '634 patent by inducing third parties, including its customers and channel partners, to use the Accused Products in the United States, and particularly in Texas. Through its sales of, and subscription agreements for, the Accused Products, CrowdStrike is doing so with knowledge of the '634 patent at least as of the filing and service of this Complaint, knows or should know that the acts of these third parties will result in infringement of the '634 patent, and has specific and actual intent to cause these third parties to infringe the '634 patent. For example, CrowdStrike makes its security services available on its website, widely advertises those services, provides applications that allow partners and users to access those services, provides instructions for installing, configuring, and maintaining the Accused Products, and provides technical support to users, including from its offices in this District.

38. CrowdStrike, in violation of 35 U.S.C. § 271(b), actively instructs, encourages, and/or aids such infringement through various acts, including instructing and/or training its customers to deploy and configure the Accused Products in a manner covered by at least claim 1 of the '634 patent. See ¶ 28 for exemplary CrowdStrike instructions for an infringing configuration.

39. CrowdStrike has had knowledge of the '634 patent, and of its infringement thereof, at least as of the filing and service of this Complaint.

40. CrowdStrike has been, and currently is, contributorily infringing the ’634 patent, in violation of 35 U.S.C. § 271(c), by selling or offering to sell, in this judicial district and throughout the United States, components that embody a material part of the inventions described in the ’634 patent, are known by CrowdStrike to be especially made or especially adapted for use in infringement of the ’634 patent, and are not staple articles of commerce or commodities suitable for substantial, non-infringing use, including at least the Falcon sensor’s Hardware Enhanced Exploit Detection and exploit mitigation components of the Accused Products. CrowdStrike’s actions contribute to the direct infringement of the ’634 patent by others, including customers of the Accused Products, in violation of 35 U.S.C. § 271(c).

41. Virsec has suffered and continues to suffer damage as a result of CrowdStrike’s infringement of the ’634 patent.

## JURY DEMAND

42. Virsec demands a jury trial as to all issues that are triable by a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Virsec respectfully prays for relief as follows:

a. Judgment that CrowdStrike is liable for direct infringement, and/or inducing the infringement, and/or contributing to the infringement of one or more claims of the Asserted Patents;

b. Compensatory damages in an amount according to proof, including lost profits, and in any event no less than a reasonable royalty;

c. Pre-judgment and post-judgment interest;

d. Attorneys’ fees and costs based on this being an exceptional case pursuant to 35 U.S.C. § 285, including pre-judgment interest on such fees and costs;

e. An accounting and/or supplemental damages for all damages incurred by Virsec from six years prior to the date this lawsuit was filed through the entry of a final, non-appealable judgment; and

f. Any further relief that the Court deems just and proper.

DATED: October 30, 2026

Respectfully submitted,

*/s/ James C. Yoon*

James C. Yoon (CA State Bar # 177155)
Ryan R. Smith (CA State Bar # 229323)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 493-9300
Fax: (866) 974-7329
Email: jyoon@wsgr.com
Email: rsmith@wsgr.com

**ATTORNEYS FOR PLAINTIFF**
**VIRSEC SYSTEMS, INC.**